## FIRST N. BANK v. N. Y. ETC. COKE CO.

### APPEAL BY A. WEILER ET AL. FROM THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY.

Argued October 7, 1890—Decided November 3, 1890.

The proceeds of real estate held in fee by a corporation and sold at sheriff's sale for the payment of its debts, are to be distributed among its lien creditors according to priority of lien, and not pro rata: Section 72, par.

Opinion of Court below.

IV., act of June 16, 1836, P. L. 775; § 2, act of April 30, 1844, P. L. 532; § 1, act of April 7, 1870, P. L. 58. Hogg's App., 88 Pa. 195, and Hopkins's App., 90 Pa. 69, distinguished.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 22 October Term 1890, Sup. Ct.; court below, No. 41 August Term 1889, E. D., sur judgment No. 300 February Term 1889, C. P.

Upon venditioni exponas to No. 41 August Term 1889, in the court below, the sheriff having made sale of a large body of real estate of the New York & Westmoreland Gas-Coal & Coke Company, a mining and manufacturing company incorporated under the act of April 29, 1874, P. L. 73, for the sum of $55,000, subject to a first mortgage for $200,000, he presented to the court for approval a schedule of distribution appropriating the fund to the judgment creditors of said corporation in the order of priority of lien. To this schedule, A. Weiler and other judgment creditors excepted, alleging, inter alia, that the sheriff erred in distributing the fund to creditors according to priority of lien, and not pro rata.* Other exceptions, including the sixth and seventh, raised questions of no importance here.

Said exceptions having been argued, the court, HUNTER, P. J., on November 25, 1889, filed an opinion in part as follows:

This will bring us then to the principal question raised by

---

* On the argument in the Supreme Court there was dispute as to what had been sold at the sheriff's sale; whether the real estate and franchises of the company, as claimed by the appellants from the terms of the levy returned to the writ of fieri facias, or the real estate only of the company, as claimed by the appellees from the return made to the venditioni exponas. The record showed that, upon the fieri facias issued to No. 32 May Term 1889, the sheriff made demand at the principal office of the defendant company of the chief officer in charge thereof, and, the corporation having no personal property sufficient to satisfy the debt, etc., he levied the execution "upon the real estate and franchises of said corporation, a description of which is contained in the inquisition attached;" that an inquisition had been held, and the real estate levied upon condemned, and after the approval thereof, the venditioni exponas issued upon which the real estate was sold.

the other exceptions named. Has the sheriff erred in not making a pro rata distribution among all the creditors named in the list attached to the schedule of distribution?

Now, there is no question that the defendant company is a private corporation and was the owner in fee of the lands sold by the sheriff, while the record shows that a simple writ of fieri facias issued. To this writ the sheriff made return evidently under the act of June 16, 1836, § 72, and quite likely following old forms used when that act was in force.

An inquisition was held on the land levied upon by the sheriff in the usual way, and the same was condemned. The condemnation was approved by the court, a venditioni exponas then issued in the usual form, and the sale was advertised as in cases of real estate, the writ commanding the sheriff to sell the land and tenements with the appurtenances. To this writ the sheriff made return accordingly, so that what the sheriff sold were the lands and tenements, with the appurtenances, of the defendant company, and no franchises of the corporation passed by the sale, as in the case of a public corporation where the franchises are levied upon, advertised and sold; and in this connection that there is a distinction between public and private corporations: See Allegheny Co. v. Diamond Market, 123 Pa. 164, and particularly page 169.

But, let us turn to the statutes regulating the sale of the property of defaulting corporations, and we have among the first the cumbrous act of June 16, 1836, § 72. This act, however, is superseded by the act of April 7, 1870, and it has been so held by our Supreme Court: Phila. etc. R. Co.'s App., 70 Pa. 355; Bayard's App., 72 Pa. 453. The proper, and indeed only way, then, is to proceed by execution under the act of 1870, which provides that the writ of fieri facias "shall command the sheriff to levy the sum of the judgment, with interest and costs of suit, of any personal, mixed or real property, franchises and rights of the corporation, and thereupon proceed and sell the same, except lands held in fee, which latter shall be proceeded against and sold in the manner provided in cases for the sale of real estate."

Now, in the present case, proceedings were throughout precisely the same as if they were against a private person, or, "in the manner provided in cases for the sale of real estate." Fur-

thermore, the act of April 30, 1844, provides that in all cases where the real estate of any corporation shall be sold at sheriff's sale, for the payment of bona fide debts, the purchaser shall receive titles discharged from any right of forfeiture to the commonwealth, by reason of misnomer, limitation or defect of power in the said corporation to purchase and hold said lands, and the purchase money shall be distributed according to priority among the lien creditors as in other cases. If the facts, then, be as we understand them and as appear from the record, there was no error in the schedule of distribution submitted by the sheriff in his behalf.

But the learned counsel for the exceptants contend that the judgments were not liens on this land sold by the sheriff, because the land was necessary for the business of the corporation and therefore substantially part of its franchises; that there could be no priority, because, as we have said, they contend that the judgment gave no lien. To support their position they cite numerous cases, among which are the cases of Phila. etc. R. Co.'s App., supra; Bayard's App., supra; Plymouth R. Co. v. Colwell, 39 Pa. 337; the dissenting opinion of Mr. Justice GREEN in Penna. R. Co. v. Pittsburgh, 104 Pa. 543; Lusk's App., 108 Pa. 152; and numerous other cases referred to in their brief, which we take the liberty of attaching to this opinion. We are unable, however, to see that these authorities support the views of the learned counsel, under the facts in the case at bar. Taken together, they rule that the act of 1836 is superseded or supplied by the act of 1870; that neither judgment nor execution gives a lien on the franchises and personal property of a corporation, and where such are sold the proceeds of sale must be distributed among all the creditors alike; that all buildings, lands, works, etc., of a public corporation, such as railroad, canal, turnpike road companies, etc., dedicated to corporate purposes and necessary to the exercise of the franchise, are part of and pass with a sale of the franchise and that a judgment is no lien thereon. Such are some of the leading principles ruled by these authorities.

The learned counsel, of course, concede that a corporation may hold lands independent of its corporate use and franchise, and in this they are right, as numerous cases prove, and among

Opinion of the Court.

them the Plymouth R. Co. v. Colwell, supra; Shamokin V. R. Co. v. Livermore, 47 Pa. 465, and other kindred cases. This question, however, does not seriously concern us here, we think. . . . .

—An order was thereupon made approving the schedule presented by the sheriff, dismissing the exceptions thereto filed, and directing distribution to be made to the lien creditors in the order of priority. Thereupon the exceptants took this appeal, assigning said order for error.

*Mr. C. S. Fetterman* (with him *Mr. H. P. Laird* and *Mr. John B. Keenan*), for the appellants.

That what property passes to a purchaser at a sheriff's sale must be ascertained from the levy, counsel cited: Grubb v. Guilford, 4 W. 223; Susquehanna Canal Co. v. Bonham, 9 W. & S. 27. That, under the act of April 7, 1870, P. L. 58, the proceeds of sale were to be distributed among all the creditors, as in case of insolvency: Phila. etc. R. Co.'s App., 70 Pa. 355; Bayard's App., 72 Pa. 453; Hogg's App., 88 Pa. 197; Hopkins's App., 90 Pa. 69.

*Mr. Jas. S. Moorhead* (with him *Mr. John B. Head*), for the appellee.

Counsel cited: Section 72, par. IV., act of June 16, 1836, P. L. 774; § 2, act of April 30, 1844, P. L. 532; act of April 7, 1870, P. L. 58; and, in addition to the cases cited by the appellants: Lusk's App., 108 Pa. 152.

PER CURIAM:

The fund in controversy was the proceeds of the sale of certain real estate of the New York & Westmoreland Gas-Coal & Coke Company, a corporation chartered under the laws of this state. That the real estate and nothing else was sold, appears by the return of the sheriff to the writ of venditioni exponas. The court below distributed the proceeds to the lien creditors of said corporation according to their priority. The appellants contend that they should have been distributed to the creditors pro rata. This is the rule in regard to personal property, but it does not apply to real estate. The second section of the act of April 30, 1844, P. L. 532, provides that,

Syllabus.

"in all cases where the real estate of any corporation shall be sold at sheriff's sale for the payment of bona fide debts, the purchasers shall receive titles discharged from any right of forfeiture to the commonwealth, by reason of misnomer, limitation or defect of power in the said corporation to purchase and hold said lands, and the purchase money shall be distributed according to priority among the lien creditors as in other cases." We see nothing in the subsequent act of April 7, 1870, P. L. 58, to change this rule. Hogg's App., 88 Pa. 195, and Hopkins's App., 90 Pa. 69, were cases of the distribution of the proceeds of sales of personal property.

The decree is affirmed and the appeal dismissed, at the costs of the appellants.

